Keith A. Custis
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Tom Kayes (*pro hac vice forthcoming*)
  tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
  wdp@kellerlenkner.com
KELLER LENKNER LLCp
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ODEH ABDELJABBAR ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>LYFT INC.<br><br>*Defendant*. | Case No. 3:18-cv-7482<br><br>**COMPLAINT**<br><br>**1.** Failure to Pay Minimum Wage and Overtime Under the FLSA<br>**2.** Failure to Pay Minimum Wage and Overtime Under the California Labor Code<br>**3.** Violation of Local Wage Ordinances<br>**4.** Failure to Provide Wage Statements<br>**5.** Denial of Access to Employment Records<br>**6.** Violation of Unfair Competition Law<br><br>(**Jury Trial Demanded**) |

## INTRODUCTION

1.      Plaintiffs work as drivers for Lyft in California. Together with other Lyft drivers, Plaintiffs form the core workforce necessary for Lyft to sell rides—the service that generates Lyft's revenue. Rather than treat Plaintiffs as employees, Lyft misclassifies Plaintiffs as independent contractors, which means it fails to pay Plaintiffs a minimum wage; fails to pay them overtime; and fails to provide them with various other protections required by federal, state, and local law.

2.      The difference between what Lyft should pay Plaintiffs and what it does pay Plaintiffs is significant. The minimum wage in California is $11 per hour. The minimum wages in Los Angeles and San Francisco, which apply to the majority of Plaintiffs, are $13.25 and $15.00 respectively. But Lyft frequently pays many Plaintiffs less than $8 per hour.

3.      Lyft does not pay Plaintiffs any overtime for the considerable time they drive more than 40 hours in a week.

4.      Although California law requires employers to provide employees with earnings statements that allow them to assess their net pay and hourly rate, Lyft provides earning statements that omit this information.

5.      Likewise, while California law requires employers to allow employees to review their employment records, Lyft has repeatedly refused to allow Plaintiffs to access their records.

6.      Plaintiffs now bring this case against Lyft to collect what it owes them under federal, state, and local law, and to obtain an injunction requiring Lyft to treat them as employees going forward.

## PARTIES

7.      Plaintiffs are Lyft drivers who drive in California. Details for each Plaintiff are listed in Exhibit A.

8.      Defendant Lyft, Inc. ("Lyft") is a Delaware corporation headquartered at 185 Berry Street, Suite 5000, San Francisco, California 94107.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq*. The Court has

supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims arising under state and local law because the claims are so related to the FLSA claim that they form part of the same case or controversy.

10.     The Court has personal jurisdiction over Lyft because Lyft has its headquarters and principal place of business in California.

11.     Venue is proper in this district (San Francisco Division) pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is headquartered in San Francisco County, conducts business in San Francisco County and many of the acts and omissions complained of occurred in San Francisco County.

## INTRADISTRICT ASSIGNMENT

12.     Pursuant to Civil Local Rules 3-2(c), a substantial part of the events or omissions giving rise to this action occurred in San Francisco County; therefore, it is appropriate to assign to the San Francisco Division.

## FACTUAL ALLEGATIONS

### A.     LYFT'S BUSINESS

13.     Lyft was founded by Logan Green and John Zimmer.

14.     As regularly described by its founders, Lyft was created with the mission of "improv[ing] people's lives with the world's best transportation."

15.     Effectively all of Lyft's revenue comes from selling rides.

16.     Customers order rides from Lyft using a smartphone app.

17.     When a customer orders a ride, Lyft assigns a nearby driver to pick up the customer and complete the requested trip.

18.     Lyft has applied for and received a license in California as a Transportation Network Company ("TNC").

19.     California law defines a TNC as an entity that "that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." CAL. PUB. UTIL. CODE § 5431. A TNC license is a type of Transportation Charter Party ("TCP") license, which is available to entities "engaged in

the transportation of persons by motor vehicle for compensation, over any public highway" in California. CAL. PUB. UTIL. CODE § 5360.

20.     Lyft drivers operating under the TNC license must display Lyft's "trade dress," which are the distinctive Lyft decals or lighted signs on the front and rear of the vehicles.

21.     Consumers uniformly associate Lyft's brand with for-hire transportation. In common parlance, the phrase "getting a Lyft" refers to obtaining a ride.

22.     Wikipedia—a crowd-sourced, online encyclopedia designed to capture the consensus view of its users—states that "Lyft is an on-demand transportation company."

23.     On October 9, 2018, Lyft announced that it had hired Anthony Foxx, the former Secretary of Transportation under President Barack Obama, as its Chief Policy Officer and Advisor to the Co-Founders. Mr. Foxx described why it was natural for him to bring his expertise to Lyft, noting that "Lyft is, at its core, a transportation company." Mr. Foxx added that "Lyft has built its brand on getting you there and caring about how you get there."

**B.     LYFT'S DRIVERS**

24.     Lyft drivers receive ride requests through the driver version of the Lyft app.

25.     Drivers can go "online" by opening the app on their smartphones. That signals to Lyft that they are ready to give rides.

26.     Lyft can then send ride requests to the drivers who are online.

27.     Drivers have no control over when, whether, or how many rides Lyft will route to them. And the driver app does not allow drivers to specify that they wish to receive rides from any particular customer(s).

28.     Lyft gives drivers 15 seconds to decide whether to accept a ride request. If a driver declines the request or takes longer than 15 seconds to decide, then Lyft withdraws the request and sends it to another driver.

29.     Lyft does not allow drivers to know where a customer wants to go before the drivers accept or decline a ride. Instead, the Lyft driver app tells a driver where the customer wants to go only after the driver has arrived to pick up the rider.

- 4 -

30.     This is because the drivers—who Lyft pays based on time and distance—likely would decline shorter rides to wait for longer, better paying ones. Lyft does not give the drivers the option to do so, in order to make sure that all of Lyft's customers can get rides regardless of distance.

31.     Lyft sets the fares that it charges its customers; drivers cannot adjust the fares.

32.     Lyft decides what portion of the charged fares are paid to the driver; drivers cannot adjust that amount, either.

33.     Aside from certain bonuses and incidental payments, the driver's portion of each fare is the only compensation Lyft pays to drivers.

34.     Lyft does not pay drivers for time spent waiting for rides or time spent driving to pick up a customer.

35.     Lyft also decides whether to charge customers a cancellation fee. So if a customer requests a ride, Lyft dispatches a driver, the driver drives 10 minutes to the customer, but then the customer cancels, it is up to Lyft to decide whether to charge the customer a fee.

36.     Because Lyft classifies its drivers as independent contractors, rather than employees, it makes no effort to ensure it pays the minimum wage required in the relevant jurisdiction or any required overtime.

37.     Lyft also does not comply with state and local rest-break or sick-time laws for its drivers, or with any federal, state, or local wage, sick-time, or other employee-benefit notice requirements for its drivers.

38.     Lyft makes it difficult for drivers to understand their true rate of pay.

39.     The weekly pay statements Lyft makes available to drivers do not track the full number of hours worked or mileage driven, both of which a driver would need to determine their true net hourly wage that week.

40.     The monthly and annual statements Lyft provides to drivers likewise do not provide the data drivers would need to calculate their true wages.

C.      **LYFT IS VIOLATING FEDERAL AND CALIFORNIA LAW**

41.     Courts determine whether a worker is an employee under the Fair Labor Standards Act by looking to the economic substance of the relationship, not the label adopted by an employer. *See Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

42.     In assessing that economic relationship, courts look to a non-exhaustive list of factors that includes:

- the degree of the employer's right to control the manner in which the work is to be performed;

- the worker's opportunity for profit or loss depending upon his or her managerial skill;

- the investment of the worker relative to his or her putative employer and whether he or she employs helpers;

- whether the service rendered requires a special skill;

- whether the worker has an ongoing relationship with the employer; and

- whether the service rendered is an integral part of the employer's business.

43.     The ultimate inquiry is whether the worker is truly operating an independent business, free from the economic dominance of an employer.

44.     Under California Law, a worker is classified as an employee unless the hiring business proves that (A) the worker is free from the control and direction of the hiring business, (B) the worker performs work that is outside the usual course of the hiring entity's business, and (C) the worker is customarily engaged in an independently established trade, occupation, or business and takes the usual steps to establish and promote his or her independent business separate from working for an employer. *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 925 (2018), *reh'g denied* (June 20, 2018).

45.     Plaintiffs qualify as employees under both federal and California law.

46.     Lyft exercises significant control over Plaintiffs by determining which rides they are offered; how much they will be paid for each ride; when they receive critical information about each ride; and how to resolve disputes and complaints regarding each ride.

47.     Because Lyft sets all the material terms of driving for Lyft, Plaintiffs cannot use managerial skill to increase their profits; their compensation turns predominately on the number of hours they drive and whether they respond to the financial incentives Lyft sets for them.

48.     Plaintiffs have invested minimal to no capital in their work for Lyft, and they do not operate a transportation-based business independent of Lyft.

49.     Plaintiffs bring no specialized skill to the job.

50.     Plaintiffs work for Lyft on an ongoing basis.

51.     Plaintiffs' work is integral to Lyft as they, and other drivers, make up the core workforce that provides Lyft's rides.

**D.     THE HARM TO PLAINTIFFS**

52.     Plaintiffs all drive for Lyft, with each Plaintiff typically driving more than 25 hours per week.

53.     Plaintiffs drive in the Los Angeles and San Francisco Bay areas.

54.     Plaintiffs' true wages are difficult to calculate accurately, as Lyft's wage statements do not contain weekly mileage figures.

55.     Nevertheless, it is clear that Lyft regularly fails to pay Plaintiffs the required minimum wage, after accounting for their expenses.

56.     Lyft never pays Plaintiffs a premium wage when they work overtime.

57.     Lyft has refused Plaintiffs' repeated requests to view their full pay records, even though such access is required by California law.

58.     Lyft also has failed to give Plaintiffs rest breaks, paid sick time, and notice of any of their employment rights under state and local law.

## CAUSES OF ACTION

**COUNT I**
**FAIR LABOR STANDARDS ACT, 29 U.S.C §§ 206, 207**
**MINIMUM WAGE & OVERTIME VIOLATIONS**

59.     Plaintiffs incorporate all previous allegations here.

60.     Plaintiffs are employees entitled to the protections of the Fair Labor Standards Act.

61.    Lyft has violated the Act by willfully failing to regularly pay Plaintiffs the minimum wage and overtime the Act requires.

62.    Plaintiffs therefore seek an injunction, unpaid wages, liquidated damages, interest, and attorneys' fees and costs.

**COUNT II**
**CALIFORNIA LABOR CODE, WAGE ORDER NO. 9**
**MINIMUM WAGE & OVERTIME VIOLATIONS**

63.    Plaintiffs incorporate all previous allegations here.

64.    Plaintiffs are employees entitled to the protections of the California Labor Code as interpreted by Wage Order 9 of the Industrial Welfare Commission.

65.    Lyft has violated the California Labor Code by failing to regularly pay Plaintiffs the minimum wage and overtime it requires.

66.    Plaintiffs therefore seek an injunction, unpaid wages, interest, and attorneys' fees and costs.

**COUNT III**
**APPLICABLE MUNICIPAL CODES**
**MINIMUM WAGE, OVERTIME, SICK TIME, NOTICE VIOLATIONS**

67.    Plaintiffs incorporate all previous allegations here.

68.    In various weeks, Plaintiffs have qualified as employees entitled to the protections of the following:

- Berkeley Municipal Code Chs. 13.99 & 13.100
- Cupertino Municipal Code Ch. 3.37
- El Cerrito Municipal Code Ch. 6.95
- Emeryville Municipal Code Ch. 37
- Los Altos Municipal Code Ch. 3.50
- Los Angeles Municipal Code Ch. XVIII
- Los Angeles County Code Chs. 8.100, 8.101
- Mountain View City Code Ch. 42
- Oakland Municipal Code Ch. 5.92
- Palo Alto Municipal Code Ch. 4.62

1       •   Pasadena Code of Ordinances Ch. 5.02

2       •   Richmond Municipal Code Ch. 7.108

3       •   San Diego Municipal Code Ch. 3, Art. 9

4       •   San Francisco Administrative Code Chs. 12R, 12W

5       •   San Jose Municipal Code Ch. 4.100

6       •   San Leandro Municipal Code Ch. 4-35

7       •   San Mateo Municipal Code Ch. 5.92

8       •   Santa Clara City Code Ch. 3.20

9       •   Santa Monica Municipal Code Ch. 4.62

10      •   Sunnyvale Municipal Code Ch. 3.80

11     69.   Lyft has violated those ordinances by failing to regularly pay Plaintiffs minimum

12  wage, and by failing to comply with the applicable sick time and notice requirements.

13     70.   Plaintiffs subject to those violations therefore seek an injunction, unpaid wages,

14  liquidated damages, interest, statutory penalties, and attorneys' fees and costs.

15                      **COUNT IV**
**CALIFORNIA LABOR CODE, § 226(A), (E)**
16  **WAGE STATEMENT VIOLATION**

17     71.   Plaintiffs incorporate all previous allegations here.

18     72.   Plaintiffs are employees under California law.

19     73.   Lyft has failed to provide Plaintiffs a wage statement that is compliant with

20  California law.

21     74.   Plaintiffs therefore seek statutory penalties and attorneys' fees and costs.

22                      **COUNT V**
**CALIFORNIA LABOR CODE, § 226(B), (F)**
23  **FAILURE TO ALLOW ACCESS TO EMPLOYMENT RECORDS**

24     75.   Plaintiffs incorporate all previous allegations here.

25     76.   Plaintiffs are employees under California law.

26     77.   Lyft has refused, in violation of California Labor Code § 226(b) and (f), Plaintiffs'

27  repeated requests to access their employment records.

28     78.   Plaintiffs therefore seek statutory penalties and attorneys' fees and costs.

1
2

**COUNT VI**
**UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200**
**UNFAIR AND UNLAWFUL BUSINESS PRACTICES**

3      79.      Plaintiffs incorporate all previous allegations here.

4      80.      By committing the legal violations described above, Lyft has committed unfair and

5    unlawful business practices in violation of the Unfair Competition Law.

6      81.      Plaintiffs therefore seek restitution, an injunction, and attorneys' fees and costs.

7      82.      Plaintiffs seek a public injunction on behalf of all Lyft drivers in California.

8                                **PRAYER FOR RELIEF**

9      83.      Plaintiffs seek a judgment against Lyft that incorporates the following relief:

10
11         (a) A declaratory judgment that the policies and practices complained of herein are
              unlawful under federal and California law;

12         (b) An award of appropriate equitable and injunctive relief to remedy Defendants'
              violations of the federal and California law, including, but not limited to, an
13             order enjoining Defendants from continuing their unlawful policies and
              practices;

14         (c) An award of damages, statutory penalties, and restitution to be paid by
15             Defendants according to proof;

16         (d) An award of general damages according to proof;

17         (e) An award to Plaintiffs for unpaid wages owed to them pursuant to the FLSA;

18         (f) An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing
              this action pursuant to Labor Code §§ 218.5 and 1194, Code of Civil Procedure
19             § 1021.5, and other applicable laws;

20         (g) An award of pre- and post- judgment interest to Plaintiffs on these damages; and

21         (h) Such further relief as this court deems appropriate.

22                             **DEMAND FOR JURY TRIAL**

23         NOW COME Plaintiffs, by and through their Attorneys, and hereby demand a trial by jury

24    on all issues triable by jury.

25

26

27

28

1    Dated: December 12, 2018                          Respectfully submitted,

2                                                      /s/ Keith A. Custis
3                                                      Keith A. Custis
                                                         kcustis@custislawpc.com
4                                                      CUSTIS LAW, P.C.
                                                       1875 Century Park East, Suite 700
5                                                      Los Angeles, California 90067
                                                       (213) 863-4276
6

7                                                      Ashley Keller (*pro hac vice forthcoming*)
                                                         ack@kellerlenkner.com
8                                                      Travis Lenkner (*pro hac vice forthcoming*)
                                                         tdl@kellerlenkner.com
9                                                      Tom Kayes (*pro hac vice forthcoming*)
                                                         tk@kellerlenkner.com
10                                                     KELLER LENKNER LLC
                                                       150 N. Riverside Plaza, Suite 4270
11                                                     Chicago, Illinois 60606
                                                       Tel: (312) 741-5220
12

13                                                     Warren Postman (*pro hac vice forthcoming*)
                                                         wdp@kellerlenkner.com
14                                                     KELLER LENKNER LLC
                                                       1300 I Street, N.W., Suite 400E
15                                                     Washington, D.C. 20005
                                                       Tel: (202) 749-8334
16

17                                                     *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28